(68 South. 616)

No. 21151.

Succession of McDERMOTT.

(April 26, 1915. Rehearing Denied May 24, 1915.)

*(Syllabus by the Court.)*

APPEAL AND ERROR ☞1056—HARMLESS ERROR.

For the purpose of proving that insanity existed at a particular time, evidence is admissible to show that it existed before or after that time. But a judgment rendered in a civil suit will not be set aside and the case remanded on account of an erroneous ruling in this respect, when it appears that the evidence excluded could not possibly change the result.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ☞1056.]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the Succession of Kate McDermott. Bill by Edward Healy and others against William P. Burke and another, executors, to annul the wills of decedent, and from a judgment sustaining the wills, he appeals and Thomas Gilmore, testamentary executor, also appeals. Affirmed.

See, also, 136 La. 80, 66 South. 546.

Peter Stifft and Caffery, Quintero & Brumby, all of New Orleans, for appellants Healy and others. E. N. Pugh, of Donaldsonville, and Wm. Winans Wall and J. C. & Thos. Gilmore, all of New Orleans, for appellant Gilmore. McCloskey & Benedict, Charles J. Theard, and Dart, Kernan & Dart, all of New Orleans, for appellees.

O'NIELL, J. The heirs at law of the late Miss Kate McDermott, her maternal uncle and aunt, brought this suit to annul her wills dated the 4th, 6th, and 9th of August, and the 12th of September, 1912, and the 8th of July, 1913. They alleged that the testatrix was non compos mentis at the time the wills were made.

Some of the legatees named in the will of August 4, 1912, had already sued to annul the wills of the 6th and 9th of August, and of the 12th of September, 1912, and of the 8th of July, 1913, alleging that they were procured by fraud, coercion, and undue influence on the part of certain legatees named in them, and that the testatrix was mentally and physically incapable of making a will on September 12, 1912, and on July 8, 1913. It was decided in that suit that the validity of the wills dated the 6th and 9th of August,

1912, was not at issue, because they had been revoked by the will dated the 12th of September, and had not been probated nor presented for probate; and as to the wills of September 12, 1912, and July 8, 1913, it was decided that the testatrix was sane at the time she made them, that they were not procured by fraud or coercion, and were not subject to attack on the ground of suggestion or captation. Therefore the wills of September 12, 1912, and July 8, 1913, were declared valid by the judgment rendered against the contestants claiming under the will of August 4, 1912; and on appeal the judgment was affirmed. See Succession of McDermott, 136 La. 80, 66 South. 546.

One of the plaintiffs in the present suit, Mrs. Margaret Healy Mulvey, having died, the trial was had on behalf of the other plaintiff, Edward Healy, who prosecutes this appeal from the judgment rendered against him, decreeing the wills of September 12, 1912, and July 8, 1913, valid testaments. One of the contestants in the former suit has also appealed from the judgment rendered in this case, as testamentary executor.

As appears from the foregoing statement, the contest is now confined to the wills dated the 12th of September, 1912, and the 8th of July, 1913.

It is admitted by the appellants that the evidence in the record does not warrant our reversing the judgment appealed from and rendering a judgment annulling the wills. They complain of the rulings of the trial judge, restricting them to proof of insanity at the dates of the wills, and excluding the evidence offered by them to prove that the testatrix was insane some time before she made a will. They ask that the judgment be annulled and set aside and the case remanded for the introduction of the evidence that was excluded by the rulings complained of.

The first bill of exceptions referred to in the plaintiffs' brief was reserved to the ruling sustaining the defendants' objection to the question propounded to the defendant's witness, Dr. Callan, on cross-examination, by the plaintiffs' counsel, viz.:

"How strong, Doctor, was her mental condition in so far as comprehending the effects of any bequests she might make in her last will and testament was concerned?"

The witness was not testifying as an expert on insanity, and the objection to his expressing his opinion of her mental capacity to comprehend the effects of the bequests in her wills was that the witness was not present at the making of the wills, and therefore could not know how strong the mental condition of the testatrix was on that occasion.

In sustaining the objection, the judge said:

"This whole matter was settled in the last decision of the Supreme Court on the other will. You must show her condition of mind at the time this will was made."

The learned judge referred to the expression in the syllabus of the decision in this succession, 136 La. 80, 66 South. 546, viz.:

"Evidence as to the mental and physical capacity of a testatrix should be confined to the time of the making of the will in contest."

That expression is not to be taken as an abstract statement of the law. It must be read in connection with the facts to which it referred and with regard to the ruling in which the issue was presented. It did not relate to a ruling excluding evidence of insanity at another time than the time the will was made. What was meant is that, to annul a will on the ground of insanity, there must be proof that the insanity existed at the time the will was made. It has never been denied that evidence of the existence of insanity before or after a particular date is admissible to prove, by reasonable inference at least, that it existed on that date. State v. Hays, 22 La. Ann. 41; State v. Lyons, 113 La. 967, 37 South. 890; Succession of Morere, 114 La. 506, 38 South. 435; Suc-

cession of Jones, 120 La. 986, 45 South. 965; Succession of Schmidt, 125 La. 1065, 52 South. 160.

The ruling in this instance, however, was correct. The witness had been examined and cross-examined at great length, and had testified that he had attended the testatrix as her physician daily for a year commencing on the 4th of August, 1912, and had attended her 12 or 14 years before, and that, although she was not quite of average intelligence, she was always perfectly sane. Hence he could not know whether she was as strong mentally at a time when he did not see her as she was on the occasions when he had seen her. The judge's expression, "You must show her condition of mind at the time this will was made," perhaps had reference to the result, the effect, and not the admissibility, of the evidence. A little later in the cross-examination of this witness, the judge said to the counsel for the plaintiff, "I will allow you to offer any evidence to prove insanity."

The second complaint is that the trial judge would not permit the plaintiffs' counsel to ascertain what certain nonexpert witnesses understood by the term "insanity." One of the rulings complained of excluded an answer to a hypothetical question, which could not possibly affect the issue in this case. The other ruling was made after the question was answered. The question was, "What is your idea of insanity, Mrs. Spurgeon?" and her answer was, "I can't answer that question." She had testified, as a witness for the plaintiff, that she had served as the housemaid of the testatrix for about nine years; that Miss McDermott was always of sound mind and strong will power; that she told the witness, on the morning of September 12, 1912, that she was going down to the notary's office that day to make her will, and had an appointment to be there at 11 o'clock, and that the memory and will power of the testatrix in September, 1912, was not differ- ent from what it had been before. There was no error in these two rulings.

Several bills of exception were taken to the rulings of the judge, sustaining the defendants' objection to the question, whether the testatrix had sufficient will power and strength of mind to resist the suggestions, persuasions, and influences of other persons regarding the disposition of her property. In propounding such questions, counsel for plaintiffs disavowed any intention of showing merely that the testaments were the result of captation or suggestion, and insisted that he was endeavoring to prove that the testatrix had no will or mind of her own, and that her testament merely reflected the thoughts and suggestions of those about her. Article 1492 of the Civil Code forbids proof that a testamentary disposition was made through hatred, anger, suggestion, or captation. Therefore, if the testatrix was sane when she made her wills, they are valid no matter how persuading were the suggestions and captations of those around her. On the other hand, if she was insane when she made her wills, they are invalid, no matter how freely and voluntarily she made them. The two witnesses who were asked such questions, as whether the testatrix had enough intellect to make a will in resistance to the wishes of others, were her physician, who swore that she was always of sound mind, and one of the legatees under the will of August 4, 1912, who swore that she was of sound mind on the 6th of August, 1912, and that he had not seen her after that date. Under these circumstances, there was no error in the rulings complained of.

The two remaining bills of exception were reserved by the plaintiffs' counsel to the rulings excluding evidence, which, counsel say, tended to prove that the testatrix had not mind enough to grasp the magnitude of her fortune. Both witnesses, to whose testimony these objections refer, testified that the tes-

tatrix was always of sound mind and understood her affairs. One was the maid who resided with the testatrix continuously during the last nine years of her life. The other was her secretary, who resided in the same house which she occupied from July, 1912, to the date of her death. When the counsel's examination of these witnesses went into details which had little or nothing to do with the question at issue, the judge put a stop to it. There was no error and surely no harm in his ruling.

The wills in contest were dictated by the testatrix to a notary public in the presence of five competent witnesses. They have all testified that she was apparently of sound mind and dictated her bequests voluntarily and with an apparent understanding of what she was doing. Three physicians who attended her, a trained nurse, who nursed her every day from the early part of August, 1912, to the morning of her death, December 16, 1913, her secretary, housemaid, several very prominent men, who knew the testatrix in a social and business way, and every witness for the plaintiffs who had any knowledge of her mental condition have concurred in the opinion that she was never insane. Notwithstanding she was afflicted with tuberculosis for several years before her death, she was cheerful almost to the end of her life. Several of the witnesses for the plaintiffs testified that the testatrix indulged in certain harmless practical jokes, and sometimes amused herself in a way that seemed strange for a woman of her age; but even they admit that they never doubted her sanity.

The evidence excluded by the rulings complained of in this appeal would not, if admitted, have any effect against the positive proof that the testatrix was of sound mind when she dictated her wills, on the 12th of September, 1912, and on the 8th of July, 1913.

The judgment appealed from is affirmed.